LUCY B. OLIVA, PROSECUTOR, v. CITY OF GARFIELD AND FRANK AVELLA, BUILDING INSPECTOR, RESPONDENTS.

Argued May 6, 1948—Decided August 9, 1948.

476

Before Justices BODINE and JACOBS.

For the prosecutor, *Heller & Laiks* (*Aaron Heller,* of counsel).

For the respondents, *Chandless, Weller, Kramer & Frank* (*John Frank, Jr.,* of counsel).

The opinion of the court was delivered by

JACOBS, J.   This matter is before the court pursuant to a writ of *certiorari* to review the denial of the prosecutor's application for a permit to erect a gasoline filling station on a vacant lot located in Garfield, New Jersey.

Under the zoning ordinance of Garfield, as amended in 1939, the premises, which were purchased by prosecutor in 1945, are located within a Class "B" residence zone. They are situated on the northwest corner of Outwater Lane and Midland Avenue. Four residences are located within 200 feet on Outwater Lane and five residences are located within 275 feet on Midland Avenue. The property on the opposite side of Outwater Lane, including the southwest corner, is owned by the City of Garfield, which has, by ordinance, appropriated funds for its grading and its conversion into a park. At the southeast corner of Outwater Lane and Midland Avenue there is a gas station within the City of Garfield and on the northeast corner of Midland Avenue and Outwater Lane there is a gas station within Saddle River Township.

On December 11th, 1947, the prosecutor made application to the building inspector of the City of Garfield for permission to erect a gasoline and service station on her property. The application was denied on February 4th, 1948, on the ground that the property was located in a Class "B" residence zone and that gasoline service stations were not permitted in such zone. At that time there were only two members functioning in the five man Board of Adjustment of the City of Garfield. The terms of three members had expired in 1945, they were not reappointed, and no other persons were appointed in their stead. Although request was made on behalf of the prosecutor to the Mayor and Council that

the vacancies be filled in order that an appeal might be taken, this was not done until shortly after the allowance of the writ of *certiorari*.

Prosecutor contends, first, that under the circumstances she should not be precluded from proceeding, by *certiorari,* without exhausting her remedy before the Board of Adjustment and, second, that she is entitled to a variance from the terms of the ordinance.

The rule that administrative remedies must be exhausted before resort is had to the courts is a wholesome one and an aid to the proper administration of justice. However, it is not absolute and will be departed from where the interests of justice so require. *Conaway* v. *Atlantic City* (*Supreme Court,* 1931), 107 *N. J. L.* 404; *Lane* v. *Bigelow* (*Court of Errors and Appeals,* 1947), 135 *Id.* 195, 200. Where, as here, there was at least grave doubt as to the availability of the administrative remedy the writ was properly issued and the meritorious issue may now properly be determined.

If the matter had been presented to the Board of Adjustment, no relief could have been obtained by the prosecutor in the absence of a finding, supported by a proper showing, that a literal enforcement of the ordinance would result in "unnecessary hardship." *R. S.* 40:55–39; *Scaduto* v. *Bloomfield* (*Supreme Court,* 1941), 127 *N. J. L.* 1. Prosecutor recognizes this but contends that the evidence establishes that the only reasonable use of her premises is for a gasoline service station, and that being deprived of such use satisfies the requirement of unnecessary hardship.

It is, of course, clear that a dwelling house could be built on the prosecutor's lot which is adjacent to other dwelling houses. The prosecutor asserts, however, that considering the heavy traffic and the presence of gasoline stations at two of the four corners, no one would want to build a dwelling house there. One of her witnesses, in answer to a question as to whether she could ever sell the property for dwelling purposes said: "I would say that it would be with great difficulty." On the other hand, a real estate broker and appraiser, called by the respondents, testified that, in his opinion, the premises could "most assuredly" be used for residence pur-

poses because "it is right in the middle of residences. There are four or five houses on each side of this vacant lot."

There is evidence in the record that when prosecutor purchased the premises in 1945, she was fully aware of the requirements in the ordinance that the premises be used for residential purposes; in any event, she is charged with knowledge. The property can be used for dwelling purposes, even though its attractiveness for such purposes is reduced by its proximity to gasoline stations and heavily trafficked roads. The authorities are clear that such reduction in attractiveness or value is not sufficient to establish the showing of unnecessary hardship required to sustain the prosecutor's application for a variance or exception to the zoning ordinance. *Scaduto* v. *Bloomfield, supra* (at *p.* 3) ; *Albright* v. *Johnson* (*Supreme Court,* 1946), 135 *N. J. L.* 70, 75.

The writ is dismissed.